## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

DAVID STANLEY                           CASE NO.  6:22-CV-01655

VERSUS                                  JUDGE DAVID C. JOSEPH

SCOTT MORGAN ET AL                      MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss or Alternatively, Rule 12(b)(1) Motion to Dismiss or Stay filed by Defendants, Scott Morgan, Wayne Griffin, Thomas Glover, and Monte Potier, all individually, and the City of Lafayette/Lafayette Consolidated Government ("LCG"). (Rec. Doc. 9). Plaintiff, David Stanley, opposed the Motion (Rec. Doc. 19), and Defendants replied (Rec. Doc. 24). The Motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, the Court recommends that Defendants' Motion be granted in part.

## Factual Background

Plaintiff, David Stanley, a Lafayette Police officer, filed this §1983 suit against successive chiefs of the Lafayette Police Department ("LPD") and LCG after Stanley was allegedly unfairly disciplined. Stanley alleged that he had been an LPD

officer since 2009 without ever having faced an Internal Affairs ("IA") investigation or discipline until May 2020. (Rec. Doc. 1, ¶9). He alleged that while off duty and acting in his private capacity as president of PAL #905, the local chapter of the Louisiana Union of Police Associations, on May 15, 2020 he posted a video to PAL's public Facebook page regarding PAL's opposition to La. HB 577.[1] (Rec. Doc. 1, ¶10-13). On May 18, 2020, he alleged that while off duty and acting in his private capacity as the PAL president, he posted a complimentary narrative on the PAL public Facebook page regarding a traffic stop wherein LPD officers apprehended a felon and confiscated large quantities of cocaine and cash. (Rec. Doc. 1, ¶14).

Stanley alleged that within four days LPD launched an IA investigation for violations of LPD social media and other related policies due to his two Facebook posts. (Rec. Doc. 1, ¶15-21). As a result of the IA investigation, LPD imposed a 14-day suspension, set to commence August 23, 2020; however, Stanley took medically approved sick leave from August 17, 2020 to June 11, 2021, such that the suspension was not served until June 14, 2021 through June 27, 2021. He alleged his sick leave was caused by the extreme emotional stress of LPD's actions. (Rec. Doc. 1, ¶22-23).

---

[1]     La. HB 577 proposed to enact La. R.S. 33:2494(C)(5) and 2554(C)(3) regarding certification and appointment of officers in the municipal fire and police civil service in the cities of Broussard, Carencro, Scott, and Youngsville.

Stanley alleged that when he returned to work, in retaliation for his conduct, he was transferred from his elite position in LPD's specialized K9 division into Uniform patrol, where he lost the opportunity to accrue overtime hours. (Rec. Doc. 1, ¶24-25). According to the Complaint, LPD wrongfully justified the transfer based on his mental health treatment which created a fitness for duty issue as a K9 officer, but that Defendant then-chief Morgan later claimed Stanley was transferred for political reasons. (Rec. Doc. 1, ¶26-28). Upon Stanley's appeal, the Municipal Fire and Police Civil Service Board (MFPCS) upheld his transfer, declared his discipline for the first post regarding HB577 improper, and upheld his discipline for his second post regarding the LPD traffic stop, but found the discipline too harsh and reduced the suspension to three days. (Rec. Doc. 1, ¶29). Stanley appealed the MFPCS decision to the 15th Judicial District Court of Louisiana, which appeal remains pending. (Rec. Doc. 1, ¶30).

Stanley filed this suit in June 2022, alleging violations of his First Amendment right to free speech and retaliation based on LPD's imposed suspension and transfer from the K9 division to patrol. Defendants filed the instant motion to dismiss arguing Stanley's claims are prescribed and that he otherwise failed to state claims against LCG, Morgan, Griffin, Glover, and Potier. Further, Defendants assert qualified immunity protects their actions and warrants dismissal. Alternatively, Defendants

suggest the Court stay these proceedings pending the outcome of Stanley's appeal in state court.

## Law and Analysis

### I.    Law applicable to Rule 12(b)(6) motions to dismiss and documents considered.

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that

4

merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 550 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556).

5

With these precepts, the Court shall consider the Complaint and its attached exhibits. (Rec. Doc. 1). The Court is also permitted to take judicial notice of public records as well as facts which are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Fifth Circuit has also sanctioned consideration of certain documents attached to the plaintiff's opposition, where no party questioned the authenticity of the documents and the documents are sufficiently referenced in the complaint. *Walch v. Adjutant Gen.'s Dep't of Texas*, 533 F.3d 289, 294 (5th Cir. 2008). Therefore, the Court shall also consider the documents attached to Plaintiff's Opposition as matters of public record and/or as uncontested documents.

## II.    <u>Whether Plaintiff's §1983 claims are prescribed.</u>

Defendants first contend that Plaintiff's claims are prescribed. 42 U.S.C. §1983 does not contain a statute of limitations. Therefore, federal law looks to the applicable state law statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Specifically, the court is to apply the state's statute of limitations applicable to personal injury actions. *Id.*, citing *Owens v. Okure,* 488 U.S. 235, 249–250 (1989), and *Wilson v. Garcia,* 471 U.S. 261, 279–280 (1985). In Louisiana, the prescriptive period for personal injury actions is one year. La. C.C. art. 3492. However, the

6

accrual date for a §1983 cause of action is governed by federal law, rather than state law. *Wallace,* 549 U.S. at 388. "[T]he limitations period begins to run when a plaintiff knows or has reason to know of the injury or, in this case, the alleged discriminatory decision that serves as the basis of his claim." *Brossette v. City of Baton Rouge*, 29 F.3d 623 (5th Cir. 1994), citing *McGregor v. Louisiana State Univ. Bd. of Supervisors,* 3 F.3d 850, 863 (5th Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994).

Plaintiff first contends that his claims accrued on June 14, 2021, when his suspension began; however, the jurisprudence outlined above definitively establishes that the one-year prescriptive period commenced when he was first notified of the disciplinary action. Plaintiff alleged in the Complaint that the LPD IA Commander informed him of his suspension on August 11, 2020 (Rec. Doc. 1, ¶22); although, the evidence shows he was formally notified of the suspension at the latest on June 11, 2021 (Rec. Doc. 1-13). The evidence shows he was notified of the transfer on September 18, 2020. (Rec. Doc. 1-14). The date of his knowledge, rather than the date(s) the suspension and transfer actually occurred, commenced the running of prescription. Thus, this suit, filed on June 14, 2022, is prescribed on its face. See also *Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F. Supp. 3d 550, 564 (W.D. La. 2019), *aff'd,* 808 F. App'x 225 (5th Cir. 2020) (Plaintiff's retaliation and due process claims accrued when he knew of his termination.)

7

Plaintiff nevertheless contends that prescription was interrupted on August 20, 2020 when he filed a Petition for Temporary Restraining Order and on November 20, 2020 when he filed Petition for Preliminary Injunction in state court based on the same allegations made the basis of this suit. Under Louisiana law, the one-year prescriptive period for such actions is interrupted by suit commenced against the obligor within the prescriptive period in a court of competent jurisdiction and venue. La. Civil Code art. 3462. "If prescription is interrupted … [p]rescription commences to run anew from the last day of interruption." La. C.C. art. 3466.

Plaintiff filed a Petition for Temporary Restraining Order and Preliminary Injunction on August 20, 2020, and a Petition for Preliminary Injunction on November 20, 2020, in state court against LPD and acting Chief Morgan seeking an order restraining enforcement of his suspension. (Rec. Doc. 19-1). The factual allegations are identical to those asserted in this suit; however, Plaintiff did not seek monetary damages or assert any federal law claims. Indeed, at the state court hearing on Defendants' exceptions to the Petition for TRO, in response to the state court judge's comment regarding claims against the city for damages based on constitutional violations, Plaintiff's counsel stated:

> …[W]e will be bringing a suit that will be coming for the damages that we've suffered. There are parts of this that are monetary in nature that we can recover. However, that being said, just because we can bring a suit later down the line for whatever is monetarily recoverable, are we precluded from filing an action to stop what is, on its face, a constitutional violation? And to that answer, it is no. We are

absolutely allowed to bring the action to stop it from happening because there is no de minimis violation.

(Rec. Doc. 19-1, p. 136).

In *Ford v. Stone*, the Eastern District of Louisiana considered the position that the plaintiff's state court suit interrupted prescription for the filing of a later suit in federal court. The Court reasoned:

> In the present case, plaintiff contends that his filing of a lawsuit in state court arising out of the same basic facts as this suit interrupted prescription. The state court suit was filed in March of 1981. Although assertion of federal claims in the state action would clearly have constituted an interruption of prescription, neither the original nor the amended state court petitions allege any federal cause of action. No reference was made in either petition to federal statutory or constitutional rights.

*Ford v. Stone*, 599 F. Supp. 693, 695–96 (M.D. La. 1984), *aff'd,* 774 F.2d 1158 (5th Cir. 1985).

In *Ford,* plaintiff's counsel confirmed on the record in the state court proceedings that federal claims would be brought later and that the only issues before the state court were grounded in state law. *Id*. at 696. See also *Joseph v. City of New Orleans*, 122 F.3d 1067 (5th Cir. 1997) (unpublished), citing *Ford v. Stone* ("[T]he filing of the suit in state court alleging only state law claims … did not interrupt the prescriptive period with respect to the federal claims."); *Moreau*, 413 F. Supp. 3d at 565 (Plaintiff's federal due process claims filed more than one year after his termination were untimely, despite Plaintiff having asserted retaliation claims based

on the same facts.) This Court likewise finds that Plaintiff's Petition for TRO in state court was insufficient to interrupt prescription for his federal law claims.

In any event, on April 26, 2021, the state court dismissed Plaintiff's petitions on Defendants' exceptions of prematurity. (Rec. Doc. 19-1, p. 130-48). Hence, by operation of La. C.C. art. 3466, even if the state court petitions interrupted prescription, the prescriptive period commenced anew on April 26, 2021, and this suit, filed on June 14, 2022, was still too late.

Plaintiff apparently attempts to distinguish his case from *Ford v. Stone* by suggesting that his state court petition referenced the constitutional violations made the basis of this suit; however, the mere reference of such allegations and the promise to file a future suit are insufficient to trigger the effects of interruption. The Court interprets the jurisprudence to require that the same claims/causes of actions be asserted or attempted to be asserted in both suits in order to trigger interruption. Accordingly, the Court finds that Plaintiff's § 1983 claims prescribed at the earliest on August 11, 2021 and at the latest on June 11, 2022 (extended to June 13, 2022 due to weekend expiration). His suit, filed June 14, 2022, was too late. The Court shall address Defendants' additional arguments for the sake of the District Court's review.

### III.    Whether Plaintiff has stated claims against LCG.

Defendants next seek to dismiss Plaintiff's claims against governmental entity LCG. Plaintiff broadly alleges that Defendants "established a prevalent, pervasive, and ongoing custom and policy of retaliatory and discriminatory conduct against Plaintiff for Plaintiff's exercise of his First Amendment freedom of speech." (Rec. Doc. 1, ¶65). Jurisprudence often refers to this as a *Monell* claim, as established by the Supreme Court in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, (1978). "[A] municipality, may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), citing *Monell*, 436 U.S. at 691. Rather, a municipality may be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*.

"To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). The plaintiff must specifically identify each policy which allegedly caused constitutional violations, so that the court can determine whether each one is facially constitutional or unconstitutional. *Piotrowski*, 237 F.3d at 579.

"[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Id*. at 578. Indeed, "the touchstone for establishing customary policy is a persistent and widespread practice." *Id*. at 581.

With regard to the third element, *Monell* plaintiffs must overcome a high threshold of proof by establishing "both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)." *Snyder v. Trepagnier,* 142 F.3d 791, 796 (5th Cir.1998), citing *Bryan County,* 520 U.S. at 410. "This requires showing either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the 'known or obvious fact that such constitutional violations would result.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 219 (5th Cir. 2019) (citations omitted).

The Complaint falls far short of stating a claim for municipal liability against LCG. The Complaint is devoid of any specific factual allegations purporting to support a *Monell* claim. Plaintiff's single conclusory allegation that all Defendants generally established a policy of retaliation and discrimination is insufficient. Thus, Plaintiff's claims against LCG should be dismissed.

### IV. <u>Whether Plaintiff has stated claims against Griffin, Glover, and Potier.</u>

"To pursue a claim under § 1983, a 'plaintiff[ ] must (1) allege a violation of *rights* secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state

law.'" *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir.2008), quoting *Resident Council of Allen Parkway Vill. v. HUD,* 980 F.2d 1043, 1050 (5th Cir.1993). Section 1983 claims include those against state actors in their individual and/or official capacities. In order to assert a valid claim against an official in his individual capacity, "[a] § 1983 claimant must 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.' "*Jones v. Lowndes Cty., Miss.,* 678 F.3d 344, 349 (5th Cir.2012), quoting *James v. Texas Collin County,* 535 F.3d 365, 373 (5th Cir.2008). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County,* 245 F.3d 447, 459 (5th Cir.2001). "A supervisory official may be held liable ... only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir.2011), quoting *Gates v. Texas Department of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir.2008).

Plaintiff alleged Defendant Morgan served as chief from January 1 through December 31, 2020. (Rec. Doc. 1, ¶61). Defendants Glover, Griffin, and Potier appear as defendants in their alleged roles as successive chiefs of police: Glover – January 1 to October 1, 2021; Griffin – October 2 to December 31, 2021; Potier –

January 1, 2022 through time of suit. (Rec. Doc. 1, ¶60-62). The factual allegations underlying Plaintiff's claims occurred during Morgan's tenure. Plaintiff alleges he was investigated and suspended in August 2020 (though the suspension was not carried out until June 2021) (Rec. Doc. 1, ¶22-23) and that Morgan transferred him in September 2020 (Rec. Doc. 1, ¶24; Rec. Doc. 1-14). Plaintiff's claims against the successive chiefs appear rooted in their alleged "continuation, renewal, and reinforcement" of his discipline. Absent more specific factual allegations regarding how Glover, Griffin, and Potier directly participated in the alleged First Amendment violations, the Court finds that Plaintiff has failed to state claims against these Defendants.

## V.   Whether Plaintiff stated a claim for First Amendment retaliation.

Defendants further urge the Court to dismiss Plaintiff's First Amendment retaliation claim. In order to state such a claim, the plaintiff must show that 1) he suffered an adverse employment decision; 2) his speech involved a matter of public concern; 3) his interest in commenting on matters of public concern outweigh the defendants' interest in promoting efficiency; and 4) the speech motivated the defendants' action. *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), citing *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 220 (5th Cir.1999).

14

Defendants challenge the first element, contending Stanley's suspension did not constitute an adverse employment action. The Fifth Circuit has clearly defined the scope of adverse employment actions:

> Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands. Transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one. This court has declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech. The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in relatively trivial matters. For example, in the education context, this court has held that decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation.

> Given the narrow view of what constitutes an adverse employment action, this court has held that the following are *not* adverse employment actions: (1) mere accusations or criticism; (2) investigations; (3) psychological testing; (4) false accusations; and (5) polygraph examinations that do not have adverse results for the plaintiff.

*Breaux*, 205 F.3d at 157–58 (cleaned up).

Suspensions without pay have been deemed adverse employment actions in civil rights cases. See e.g. *LeMaire v. Louisiana Dep't of Transp. & Dev.,* 480 F.3d 383, 390 (5th Cir. 2007) (Two-day suspension without pay was sufficient adverse employment action in retaliation case). But see discussion in *Goodwin v. Acadian Ambulance Serv., Inc*., No. 6:16-CV-0009, 2017 WL 6892994, at *10 (W.D. La.

Dec. 5, 2017), *report and recommendation adopted,* No. CV 16-0009, 2018 WL 396193 (W.D. La. Jan. 11, 2018), wherein this Court examined relevant jurisprudence finding that one-day and comparable suspensions without pay were not sufficiently adverse employment actions. At this early stage of the proceedings and given the fact that Defendants do not challenge the sufficiency of Stanley's alleged transfer from K9 to patrol, the Court is unwilling to find Plaintiff failed to allege an adverse employment action for purposes of First Amendment retaliation. Accordingly, the Court declines to dismiss Plaintiff's First Amendment retaliation claim on these grounds.

## VI.    Defendants' qualified immunity and request for stay.

Defendants maintain that regardless of whether Stanley sustained a constitutional injury, Defendants are protected by qualified immunity. The Fifth Circuit set forth the applicable law as follows:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. To discharge this burden, "a plaintiff must satisfy a two-prong test." "First, he must claim that the defendants committed a constitutional violation under current law." "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave

16

reasonable warning that the conduct then at issue violated constitutional rights.'"

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194–95 (5th Cir. 2009) (citations omitted).

The court need not consider whether a constitutional violation occurred under the first prong when the facts support a finding that the defendant's actions were objectively reasonable under the second prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Therefore, in this case, the Court need not consider whether Defendants violated the First Amendment when the facts support a finding of qualified immunity.

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 134 S.Ct. 2012, 2023 (2014). Supreme Court precedent does not require a case directly on point for a right to be clearly established; existing precedent must have placed the statutory or constitutional question beyond debate. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018), citing *White,* 137 S.Ct. 541, 551 (2017). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Defendants rely upon LPD's policies and the IA investigation to support then-Chief Morgan's decision to suspend Stanley. Notably, the Complaint does not

17

challenge LPD's policies as unconstitutional (see e.g. Rec. Doc. 1, ¶ 15; 21 and Rec. Doc. 1-6, 1-7, and 1-8), despite Plaintiff's opposition brief, which attacks the LPD policies with conclusory arguments. Rather, Plaintiff challenges Morgan's motive for the investigation and the results thereof—a finding that Plaintiff violated LPD policies regarding social media and public information and imposition of discipline. Plaintiff appealed the decision through the MFPCS and up to the state court of appeals, where the appeal remains pending. Absent a specific challenge to the underlying LPD policies, the Court is unwilling at this stage in the proceedings to bestow qualified immunity when the propriety of Defendants' actions has not been definitively sanctioned in the administrative procedural channels.  Accordingly, if the case survives dismissal on prescriptive grounds, the Court concludes that a stay would be appropriate pending outcome of the state court appeal. Notably, Plaintiff states in opposition that he "litigated his constitutional claims before the Citizen Administrative Board as ordered by [the state court judge]." (Rec. Doc. 19, p. 15). Acceptance of Plaintiff's statement for these purposes warrants a stay.[2]

---

[2]    Plaintiff's statement presents a catch 22. Acceptance of this statement for the purpose that his state court petitions interrupted prescription (as Plaintiff intended in his brief) warrants additional consideration of the prescription issue. Since Plaintiff theoretically admits to litigating constitutional issues in state court, then prescription was arguably interrupted, but the Court's conclusion remains unchanged. As discussed above, the interruption ceased, and prescription commenced anew on April 26, 2021. The June 14, 2022 complaint in this Court was untimely regardless of how the state court petitions are analyzed.

In the event Defendants prevail on their motion, Plaintiff sought leave to amend in order to state claims. "District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The court in its discretion may disallow amendment when the amendment would be futile. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). The Court finds that no amendment could cure the deficiencies rendering this suit untimely. Thus, Plaintiff's request to amend should be denied to the extent his claims are dismissed on the grounds of prescription.

## VII.   Defendants' request for attorneys' fees.

In the event of a dismissal pursuant to their Motion, Defendants last seek an award of attorneys' fees under §1988(b), which provides that the court, in its discretion, may allow the prevailing party in a §1983 action a reasonable attorney's fee as part of the costs. The language of the statute is permissive. The Court declines to recommend an award of attorneys' fees under §1988(b) at this time, where Defendants prevailed on a procedural issue. Prevailing party status should be reserved for those parties who "obtain judicially-sanctioned relief, such as a judgment on the merits or a consent decree (judicial imprimatur) … [which] must

materially alter the legal relationship between the parties [and] must modify [the opposing party's] behavior in a way directly benefitting [the other party] at the time of the relief granted." *LULAC of Texas v. Texas Democratic Party*, 428 F. App'x 460, 463 (5th Cir. 2011), citing *Dearmore v. City of Garland,* 519 F.3d 517, 521 (5th Cir.2008). In other words, absent a judicial decree that Defendants did not violate Plaintiff's First Amendment rights, the Court is unwilling to grant them prevailing party status.

## Conclusion

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss (Rec. Doc. 9) be GRANTED IN PART AND DENIED IN PART. The Motion should be granted on the grounds of prescription, and Plaintiff's suit should be dismissed with prejudice as prescribed. The Motion should be denied to the extent Defendants seek an award of attorneys' fees under §1988(b).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 18th day of January, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE